408 S.E.2d 330

**G. Steele DEWEY, III, Plaintiff Below, Appellee,**

v.

**BOARD OF ZONING APPEALS OF GREENBRIER COUNTY and Sam R. Tuckwiller, William E. Ott, E.P. Webb, William A. Clowser and Frank Ramsey, as Members of the Board of Zoning Appeals of Greenbrier County, Defendants Below,**

**and Richard McDowell, Marylou McDowell, Thurman Wade, Lucille Wade, Betty Jo Peoples, Martha Dixon, Lee Braun, Marlene Braun, Jack Ewart, and Patricia J. Detch, Defendants Below, Appellants.**

No. 20075.

Supreme Court of Appeals of West Virginia.

Submitted May 15, 1991.

Decided July 19, 1991.

James R. Watson, Steptoe & Johnson, Charleston, Paul S. Detch, Lewisburg, for appellants.

Charles R. McElwee, Robinson & McElwee, Charleston, for appellee.

PER CURIAM.

The appellants, Richard McDowell, et al., seek to have this Court reverse an order for a writ of prohibition issued by the Circuit Court of Greenbrier County against the Board of Zoning Appeals of Greenbrier County prohibiting the Board from conducting a hearing on any of the grounds alleged by the appellants in their petition appealing the issuance of a building permit to the appellee, G. Steele Dewey, III. Upon review of the record before us, we find that the appellants are entitled to a hearing before the Board of Zoning Appeals, and we reverse the order of the

circuit court awarding the writ of prohibition.

In 1973, the Greenbrier County Court [now Commission] adopted an ordinance establishing comprehensive zoning regulations for the tax districts of Lewisburg and Fort Springs, and providing for the administration, enforcement and amendment of those zoning regulations. The various zoning classifications consisted of residential districts, highway commercial districts, and regional commercial districts. In 1989, the County Commission of Greenbrier County rezoned part of a tract near U.S. Route 219 from a residential district to a regional commercial district.

On October 17, 1989, the appellee filed an application for a building permit to construct a retail shopping center near the intersection of U.S. Route 219 and Teaberry Road in Greenbrier County. The projected construction cost of the shopping center project was $3,530,000, and a fee of $3,530 was paid for the building permit. The following day, the building permit was issued to the appellee by Clyde L. Bowling, the assessor of Greenbrier County, and James R. Simpson, zoning officer of Greenbrier County.

Thereafter, the appellants, adjacent landowners to the proposed shopping center, challenged the issuance of the building permit by filing an appeal with the Board of Zoning Appeals.[1] The appellee filed a motion to dismiss the appeal contending that the appeal petition did not state grounds for the rescission of the building permit and that the Board would exceed its legitimate powers if it were to rescind the building permit on the grounds alleged in the appeal petition. The appellee further requested that the Board limit the hearing to oral argument on the appellee's motion to dismiss. By letter dated December 6, 1989, the Board of Zoning Appeals advised the parties that the Board would not limit the hearing to legal argument, and that it preferred "a unified hearing concerning all points factual and legal before any determination is made upon the [p]etition."

The appellee then filed a petition with the circuit court seeking a writ of prohibition to prohibit the Board of Zoning Appeals from taking evidence on any of the grounds alleged by the appellants in their petition. On December 27, 1989, the circuit court issued a rule directing the Board of Zoning Appeals to show cause why the writ of prohibition should not be awarded. On the basis of the pleadings, briefs and oral argument of both parties, the circuit court granted the writ of prohibition and entered an order prohibiting the Board of Zoning Appeals from taking evidence on any of the grounds alleged in the appeal petition. This matter is now before this Court on the appeal of that order.

■ The principal issue in this appeal is whether the circuit court erred in prohibiting the Board of Zoning Appeals from conducting a hearing on the appellants' challenges to the building permit issued to the appellee relating to the provisions of sections 502(1)(f) and 502(1)(g) of the county's zoning ordinance.[2] The appellants contend

---

1. The allegations raised by the appellants in the appeal petition appear to essentially follow the language of *W.Va.Code,* 8–24–39 [1988] which recognizes as an integral part of the planning of an area:

   that adequate light, air, convenience of access, and safety from fire, flood and other danger may be secured; that congestion in the public streets may be lessened or avoided; that the public health, safety, comfort, morals, convenience and general public welfare may be promoted; that the preservation of historic landmarks, sites, districts and buildings be promoted; and that the objective set forth in section one [§ 8–24–1] of this article may be further accomplished[.]

2. Section 502, which sets forth the prohibited uses and performance standards, provides, in relevant part:

   1. No use shall be permitted which is noxious, hazardous, or offensive in the immediately surrounding area by reason of odor, dust, smoke, gas, vibration, illumination, or noise, or which constitutes a public hazard whether by fire, explosion or otherwise. In determining whether a proposed use is noxious, hazardous, or offensive, the following standards shall apply. The proposed operation shall not:

   . . . .

   f. Discharge any untreated sewage, or industrial waste into any stream or otherwise con-

that it was the duty of the Board of Zoning Appeals to conduct a hearing to verify that the issuance of the building permit was consistent with the Greenbrier County zoning ordinance enacted in 1973.[3] The appellee argues that: (1) the Greenbrier County Commission, in adopting the zoning ordinance, had no authority to require the issuance of building permits; (2) if the Greenbrier County Commission had authority to require the issuance of building permits, the only issues relevant to the issuance or rescission of a building permit are those specified in *W. Va. Code*, 8–24–36;[4] (3) the power granted to county commissions pursuant to *W. Va. Code*, 8–24–39(e)[5] does not authorize the issuance of building permits; and (4) the provisions of section 502 of the Greenbrier County zoning ordinance have no relevance to the issuance of a building permit, are void for vagueness, and may, in part, have been preempted by state law.[6]

County commissions derive their general authority to adopt zoning ordinances from *W. Va. Code*, 8–24–39 [1988].[7] *See Wolfe v. Forbes*, 159 W.Va. 34, 39, 217 S.E.2d 899, 903 (1975). The county commission's statutory authority to control land use through zoning is set forth in *W. Va. Code*, 8–24–39

---

tribute to the pollution of surface or underground waters.

g. Create any other objectionable condition in an adjoining area which will endanger public health and safety or be detrimental to the proper use of the surrounding area.

**3.** *W. Va. Code*, 8–24–57 [1969] provides that: "[t]he board of zoning appeals *shall* fix a reasonable time for the hearing of an appeal." (emphasis added) Section 907 of the Greenbrier County zoning ordinance enacted in 1973 is modeled after that statute.

**4.** The appellee focuses on the following language contained in *W. Va. Code*, 8–24–36 [1973], which relates to the issuance of improvement location permits:

A structure shall not be located and an improvement location permit shall not be issued for a structure on unincorporated lands within the jurisdiction of the county planning commission *unless the structure and its location conform to the county's comprehensive plan and ordinance.*

(emphasis added). The appellee also argues that the ordinance referred to in the foregoing statutory provision is the "ordinance containing provisions for subdivision control" mentioned in the first sentence of *W. Va. Code*, 8–24–36 [1973]. However, as we pointed out in syllabus point 1 of *Peyton v. City Council of City of Lewisburg*, 182 W.Va. 297, 387 S.E.2d 532 (1989): "'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)."

**5.** *W. Va. Code*, 8–24–39 [1988] provides, in relevant part: "[T]he governing body of a . . . county commission shall have the following powers: (e) To regulate and determine the use and intensity of use of land and lot areas[.]"

**6.** Although the appellee raised this issue before the circuit court, the circuit court specifically stated that it did not "rule that Section 502 was unenforceable," and it did not pass upon whether the provisions of that section were void for vagueness or preempted by state law. Since this issue was not decided by the circuit court, we decline to address it. *See* syl. pt. 2, *Duquesne Light Co. v. State Tax Dep't*, 174 W.Va. 506, 327 S.E.2d 683 (1984).

**7.** *W. Va. Code*, 8–24–39 [1988] provides, in pertinent part:

[T]he governing body of a . . . county commission shall have the following power:

(a) To classify, regulate and limit the height, area, bulk and use of buildings hereafter to be erected;

(b) To regulate the height, area, bulk, exterior architectural features and use of buildings hereafter to be erected within designated historic districts;

(c) To regulate the alteration of exterior architectural features of buildings within historic districts and to regulate the alteration of historic landmarks and sites;

(d) To regulate and determine the area of front, rear and side yards, courts and other open spaces about such buildings;

(e) To regulate and determine the use and intensity of use of land and lot areas;

(f) To classify, regulate and restrict the location of trades, callings, industries, commercial enterprises and the location of buildings designated for specified usages;

(g) To regulate and control, or prohibit in certain areas, junk yards, salvage yards, used parts yards, dumps or automobile or appliance graveyards, or the maintenance and operation of secondhand stores or outlets in residential areas;

(h) To classify and designate the rural lands among agricultural, industrial, commercial, residential and other uses and purposes; and

(i) To divide the municipality or county into districts of such kind, character, number, shape and area as may be deemed necessary to carry out the purpose of this section.

[1988], which provides, in relevant part, that the county commission shall have the power "to classify, regulate and limit the height, area, bulk and use of buildings" to be erected, and "to regulate and determine the use and intensity of use of land and lot areas."

Furthermore, under the provisions of *W.Va.Code*, 8–24–36 [1973], no improvement location permit shall be issued for a structure within the jurisdiction of the county commission "unless the structure and its location conform to the county's comprehensive plan and ordinance." The official who has the authority to issue and control improvement location permits within the jurisdiction of the commission is designated by the county's ordinance. *W.Va. Code*, 8–24–37 [1969].

■ As part of the zoning ordinance, the county commission is also required to create a Board of Zoning Appeals. *See W.Va. Code*, 8–24–51 [1969]. Appeals from the issuance of any improvement location permits by the official charged with that authority under the ordinance are to be filed with the Board of Zoning Appeals.[8] *See W.Va.Code*, 8–24–56 [1969]. The Board of Zoning Appeals is required, pursuant to the provisions of *W.Va.Code*, 8–24–55 [1969], to "[h]ear and determine appeals from and review any order, requirement, decision or determination made by an administrative official ... charged with the enforcement of any ordinance[.]" *See DeCoals, Inc. v. Board of Zoning Appeals of City of Westover*, 168 W.Va. 339, 340, 284 S.E.2d 856, 857 (1981); *Wolfe v. Forbes*, 159 W.Va. at 41, 217 S.E.2d at 904. Furthermore, as we pointed out in *Wolfe v. Forbes*, 159 W.Va. at 41, 217 S.E.2d at 904, the "ultimate scope" of the board's powers is set forth in the final paragraph of *W.Va.Code*, 8–24–55:

> In exercising its powers, the board of zoning appeals may reverse or affirm, in whole or in part, or may modify the order, requirement, decision or determination appealed from, as in its opinion ought to be done in the premises, and to that end shall have all the powers and authority of the officer or board from whom or which the appeal is taken.

Moreover, the Board of Zoning Appeals is an administrative agency acting in a quasi-judicial capacity, and has no power to amend the zoning ordinance under which it functions since it is not a lawmaking body. *Wolfe v. Forbes*, 159 W.Va. at 45, 217 S.E.2d at 906.

Pursuant to the foregoing statutory provisions, the Greenbrier County Commission adopted a comprehensive zoning ordinance in 1973. Under this zoning ordinance, the County Commission established, among other things, the requirement that a permit be obtained prior to the construction of any building structure. Specifically, Section 802 of the Greenbrier County Zoning Ordinance provides, in relevant part that "[a] permit shall be required ... prior to the erection of any building structure or portion thereof[.]" The ordinance charges the county assessor with the duty of accepting and issuing building permits. Moreover, section 804 of the ordinance provides that "[n]o improvement location permit or use permit shall be issued until the assessor has certified that the proposed building or alteration and the proposed use of the property complies with all the provisions of this Ordinance." The decision of the assessor with respect to the issuance of the building permit is appealable to the Board of Zoning Appeals which is then required to conduct a hearing under the provisions of section 904 of the zoning ordinance.[9]

In the case now before us, among the challenges to the building permit raised by the appellants in their appeal to the Board of Zoning Appeals was the allegation that:

---

8. The appeal provision is set forth in Section 906 of the Greenbrier County Zoning Ordinance, which is similar to the appeal provision in *W.Va.Code*, 8–24–56 [1969], and provides, in pertinent part:

> An appeal taken from a requirement, decision or a determination made by the administrative official charged with the enforcement of the Ordinance shall be filed with the Board of Zoning Appeals.

9. Section 904 of the Greenbrier County Zoning Ordinance is modeled after its enabling statute, *W.Va.Code*, 8–24–55 [1969].

[T]he property is not suited for the property at hand. Specifically, said property is not served by appropriate storm sewers. Paving and building of a retail shopping center at said location will constitute a hazard and a nuisance to adjoining property owners, will cause pollution into the subterranean ground waters of the County, will cause potential flooding in low-lying areas of the municipality of Lewisburg, and will concentrate waters onto surrounding property owners to their detriment.

The appellants also alleged that the proposed shopping center is detrimental to the surrounding area.

After the matter came before the circuit court upon the appellee's petition for a writ of prohibition against the Board of Zoning Appeals, the circuit court found that the foregoing allegations raised by the appellants related to sections 502(1)(f) and 502(1)(g) of the zoning ordinance, and the circuit court directed the parties to submit legal arguments as to the application of these provisions in the zoning ordinance. After considering the legal arguments of the parties, the circuit court ruled that section 502 should not be considered with respect to whether or not a building permit should be issued, although the circuit court did not rule that section 502 is unenforceable. The circuit court stated on the record that whether or not the issuance of the permit violated section 502 was not a matter to be addressed by the Board of Zoning Appeals, essentially because the circuit court believed the issues involved technical engineering matters and there were no standards prescribed for the Board of Zoning Appeals to follow. Furthermore, the circuit court ruled that although subparagraph 2 of section 502 [10] requires an applicant for a proposed use, when requested, to demonstrate as a condition of approval that adequate provisions will be made to minimize any objectionable element to the degree necessary to insure that the proposed use will not be noxious or offensive, the

assessor in the present case issued the permit without requiring any supplemental information. The circuit court concluded that the Board of Zoning Appeals could only consider exceptions relating to the height, area, building, or location at the hearing, and could not consider sections 502(1)(f) and 502(1)(g).

We have historically recognized that a writ of prohibition lies against an administrative tribunal where, in the performance of its quasi-judicial functions, it is attempting to exercise a power it does not possess. *Cowie v. Roberts*, 173 W.Va. 64, 67, 312 S.E.2d 35, 38 (1984); *United States Steel Corporation v. Stokes*, 138 W.Va. 506, 76 S.E.2d 474 (1953); *Huntington Chamber of Commerce v. Public Service Commission*, 84 W.Va. 81, 83, 99 S.E. 285, 285 (1919). We observed in syllabus point 2 of *Brazie v. Fayette County Commissioners*, 25 W.Va. 213 (1884):

The writ of prohibition lies from a superior court not only to inferior *judicial* tribunals, but to inferior *ministerial* tribunals possessing incidentally judicial powers and known as *quasi* judicial tribunals, and also in extreme cases to purely ministerial bodies when they usurp and attempt to exercise judicial functions.

However, in the case now before us, we do not find that the Board of Zoning Appeals was attempting to exercise a power it did not possess when it scheduled the hearing on the appeal of the appellee's building permit. Clearly, the Board of Zoning Appeals is charged with the power, under the provisions of *W.Va.Code*, 8–24–55 [1969] and section 904 of the zoning ordinance, to hear and determine an appeal from the assessor's decision to issue a permit to the appellee. Moreover, the language of *W.Va.Code*, 8–24–57 [1969] and section 907 of the zoning ordinance which mandates that the "zoning board of appeals shall fix a reasonable time for the

---

**10.** Subparagraph 2 of section 502 provides that the applicant, when requested by the county, "shall submit supplemental information, plans and impartial expert judgments, and the County

may require the expert advice of official agencies or private consultants and such reasonable tests as are deemed necessary, the cost of which shall be born by the applicant."

hearing of an appeal" does not restrict the hearing to only legal arguments.

 However, we do not believe that the Board of Zoning Appeals has an unbridled right to consider any evidence the appellants may choose to submit at the hearing. Instead, we believe the scope of the hearing should focus on whether the proposed structure and its location conform to the county's comprehensive plan and ordinance. Moreover, we find that the appellants may present evidence regarding those allegations in their appeal petition, specifically stated by the Court herein, which relate to sections 502(1)(f) and 502(1)(g) of the zoning ordinance.[11]

■ We believe the legislature, by requiring the Board of Zoning Appeals to conduct a hearing, intended for a complete record to be developed before the Board. Then, if the decision of the Board of Zoning Appeals is subject to review by certiorari to the circuit court pursuant to *W. Va. Code*, 8-24-59 [1969], the circuit court has the benefit of a fully developed record to review to determine the basis of the Board's decision.[12]

Thus, we conclude that the trial court erred in issuing an order prohibiting the Board of Zoning Appeals from hearing evidence as to whether the appellee's proposed structure and location conform to sections 502(1)(f) and 502(1)(g) of the Greenbrier County Zoning Ordinance. Accordingly, we reverse the decision of the circuit court, and we remand this case for a hearing on the issue of whether the proposed structure for which the permit was issued and its location will conform to the county's comprehensive plan and ordi-

nance, specifically sections 502(1)(f) and 502(1)(g) of the ordinance.

Reversed and remanded.

11. The zoning ordinance specifically states as one of the purposes of the ordinance is "[t]o classify, *regulate* and limit the height, area, bulk and *use* of building hereinafter to be erected therein." (emphasis added) Sections 502(1)(f) and 502(1)(g) are among the prohibited uses and performance standards listed in the ordinance.

12. In *Harding v. Board of Zoning Appeals of City of Morgantown,* 159 W.Va. 73, 83, 219 S.E.2d 324, 330 (1975), we recognized that "*W. Va. Code* 1931, 8-24-59, as amended, ... which provide[s] for review by *certiorari* of all board of zoning appeals' decisions, necessarily implies that a board also is required to make written findings of fact in deciding to grant or deny a conditional use permit." It logically follows that the same statutory provision would also require the Board of Zoning Appeals in the present case to make written findings of fact.