[Civ. No 30751. Second Dist., Div. Three. May 13, 1968.]

CITY OF LOS ANGELES et al., Plaintiffs and Appellants, v. STANDARD OIL COMPANY OF CALIFORNIA, Defendant and Respondent.

Roger Arnebergh, City Attorney, Gilmore Tillman, Assistant City Attorney, Desmond J. Bourke, Deputy City Attorney, Kirtland & Packard, Robert C. Packard, P. Dennis Keenan, Ellis J. Horvitz, and Henry E. Kappler for Plaintiffs and Appellants.

Lawler, Felix & Hall, Marcus Mattson, R. F. Outcault, Jr., and James N. Ries for Defendant and Respondent.

McCutchen, Black, Verleger & Shea, Philip K. Verleger, Max K. Jamison, Jerome A. Hoffman, Robert K. Walsh, Kaplan, Livingston, Goodwin, Berkowitz & Selvin, Herman F. Selvin, Sims Hamilton, Flint & MacKay, Philip M. Battaglia, Lon R. Clearwaters, Veatch, Carlson, Dorsey & Quimby and Robert C. Carlson as Amici Curiae on behalf of Defendant and Respondent.

MOSS, J.—The complaint seeks a declaration that a statute enacted by the Legislature in 1964 relating to contribution among tortfeasors responsible for the Baldwin Hill Reservoir disaster in December 1963[1] is constitutional. Although several oil companies and other persons are named as defendants in the complaint, only respondent Standard Oil Company of California appeared in the action. The demurrer of respondent was sustained on the sole ground that the statute is unconstitutional in that it is special legislation based upon an invalid classification. The trial court entered a judgment declaring that the plaintiffs are not entitled to the declaration of constitutionality they seek.[2] Plaintiffs appeal from the judgment.

---

[1]The statute involved is Chapter 1 of the Statutes of the State of California, First Extraordinary Session 1964, and will be referred to in this opinion as ''AB 9.''

[2]It was proper for the court to make this declaration in the course of sustaining the demurrer. (*Wilson* v. *Civil Service Com.*, 224 Cal.App.2d 340, 344 [36 Cal.Rptr. 559].) The parties do not contest this point.

The complaint alleges in substance that: from 1924 to the present the named defendants have extracted petroleum, water and natural gas from the Inglewood Oil Field; in 1951 plaintiff Department of Water and Power built the Baldwin Hills dam and reservoir in the City of Los Angeles on a site adjacent to the Inglewood Oil Field; the drilling operations of the defendants caused the surface area of the oil field and surrounding properties to subside; the subsidence caused the Baldwin Hills dam to collapse and the reservoir to flood the surrounding area; the flood caused severe damage to the property of more than 3,700 property owners, killed at least five persons, and injured many others; the victims of the flood were in urgent need of funds to mitigate their suffering and to restore the damaged community; litigation to determine the parties responsible for the losses would require an extended period of time and would frustrate prompt settlement of loss claims; plaintiffs paid a reasonable amount for the claims of those who were injured in the flood; the aggregate amount of claims paid exceeds $12,000,000; in the event plaintiffs are held jointly liable for the flood damage they are entitled to contribution from the defendants by reason of the provisions of AB 9; an actual controversy exists between plaintiffs and defendants as to the constitutionality of AB 9.

AB 9 is entitled "An act relating to contribution among joint and several tortfeasors, and declaring the urgency thereof, to take effect immediately." The text of AB 9 is set out in the appendix to this opinion. By its terms AB 9 is made applicable only to injuries resulting from the failure of the Baldwin Hills dam and reservoir on December 14, 1963. (§ 1.) The principal distinction between the right created by AB 9 and the general California law on contribution among joint tortfeasors arises by reason of section 3(a) of AB 9. Section 3(a) provides for a right of contribution among joint or several tortfeasors which "shall arise when one tortfeasor has discharged by payment the common liability or has paid more than his pro rata share thereof, although judgment has not been rendered against all or any of them in an action on the tort." Section 875 subdivision (c) of the Code of Civil Procedure, on the other hand, provides that the "right of contribution may be enforced only after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof."

It is respondent's principal contention on appeal that AB 9 violates all the constitutional guarantees against

special and arbitrary legislation[3] because it provides for a different right of contribution among tortfeasors who may be liable for injuries caused by the Baldwin Hills dam disaster from that applicable to tortfeasors in general. This contention is without merit.

██ In response to a similar contention the Supreme Court set forth the governing law as follows: "The contention that the section in question lacks uniformity, grants special privileges and denies equal protection of the laws, is also without merit. None of these constitutional principles is violated if the classification of persons or things affected by the legislation is not arbitrary and is based upon some difference in the classes having a substantial relation to the purpose for which the legislation was designed. [Citations] ██ A law to be general in its scope need not include all classes of individuals in the state. Nor is a classification void because it does not embrace within it every other class which might be included. [Citations.] ██ Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations] ██ A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would

---

[3]The constitutional provisions upon which respondent relies in support of this contention are as follows: "All laws of a general nature shall have a uniform operation." (Cal. Const., art. I, § 11.) "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." (Cal. Const., art. I, § 21.) "The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . Nineteenth—Granting to any corporation, association, or individual any special or exclusive right, privilege, or immunity. . . .
': Thirty-Third—In all other cases where a general law can be made applicable." (Cal. Const., art. IV, § 25.)
". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const., amend. XIV, § 1.)
AB 9 was enacted before the constitutional revision adopted two years later. In place of art. IV, § 25 the revised Constitution substituted art. IV, § 16, which reads: "A local or special statute is invalid in any case if a general statute can be made applicable." The changes do not constitute a change in meaning. (See Cal. Const. Revision Com. Proposed Revision of California Constitution, p. 39, State Printing Office, 1966.)

sustain it." (*Sacramento Municipal Utility Dist.* v. *Pacific Gas & Elec. Co.,* 20 Cal.2d 684, 693 [128 P.2d 529].)

 Applying these rules to AB 9 we cannot say that the classification among tortfeasors provided therein is palpably arbitrary and without a reasonable basis. The reason why AB 9 was enacted is stated in the statute. After reciting the basic facts of the Baldwin Hills dam disaster, section 10 recites, "The victims of the flood are in urgent need of funds to mitigate the hardships which they are suffering and to restore the damaged homes and business properties. The remedies provided by this act are necessary to cope with this situation and must be available immediately." While it is a judicial question whether a general law could have been made applicable to accomplish the purposes of the special law, the declaration in the special law as to the reasons for its enactment should not be ignored. (*Solvang Municipal Improv. Dist.* v. *Jensen,* 111 Cal.App.2d 237, 240 [244 P.2d 492].)

 The widespread havoc caused by the collapse of the Baldwin Hills dam was reason enough to justify the enactment of legislation to encourage the parties liable for the damage to settle the claims against them prior to judgment. The general contribution statute deters such settlements because under Code of Civil Procedure section 875 a tortfeasor who settles a claim before rendition of judgment therefor loses the right to seek contribution against other persons who may be liable for the same injury. (See *Guy F. Atkinson Co.* v. *Consani,* 223 Cal.App.2d 342, 345-346 [35 Cal.Rptr. 750].) The Baldwin Hills dam disaster created a unique problem in that the number of persons injured therein was much greater than in the usual case and the issue of causation is unusually complex. By reason of these factors the need for legislation to encourage settlement was particularly acute.

Respondent urges, however, that if the Legislature desired to change the rule for contribution among the tortfeasors liable for the Baldwin Hills injuries it was required by the federal and state Constitutions to extend the change to all tortfeasors rather than to confine it to those responsible for the Baldwin Hills flood. "If good ground for the classification exists, such classification is not void because it does not embrace within it every other class which might be included." (*Heron* v. *Riley,* 209 Cal. 507, 518 [289 P. 160] ; see *Matter of Petition of Burke,* 160 Cal. 300, 303 [116 P. 755].) Good ground exists for the distinction made in AB 9 between

the parties responsible for the Baldwin Hills damage and tortfeasors who may be liable for a common injury in general. A rule which permits a right of contribution among tortfeasors to arise prior to judgment, while it tends to encourage out-of-court settlements, also tends to promote a multiplicity of litigation because it permits a tortfeasor against whom judgment has been rendered to bring a new and separate suit for contribution against other alleged tortfeasors not named in the judgment. The issues of liability and damages already litigated in the action brought against the judgment tortfeasor must be tried again in the contribution action. (See Prosser, Law of Torts (3d ed. 1964) p. 277.) The Legislature did not act arbitrarily in refusing to make a change in the general law that could have the possible effect of proliferating the general run of tort litigation.

No constitutionally protected rights of the Baldwin Hills tortfeasors are impaired by AB 9. They are entitled under AB 9 to a judicial determination of their liability and the amount thereof to the same extent as other tortfeasors. It is true that AB 9 does expand the class of persons who can subject them to suit since under the general law the choice of defendants is with the injured claimants whereas under AB 9 the choice is also given to other tortfeasors. However, no Baldwin Hills tortfeasor had any constitutionally protected right to avoid paying for the consequences of its tort merely because some of the injured claimants might have chosen to seek redress from other tortfeasors. (See *Augustus* v. *Bean,* 56 Cal.2d 270, 272 [14 Cal.Rptr. 641, 363 P.2d 873].) This case is distinguished from *Board of Education* v. *Alliance Assur. Co.,* 159 F. 994 and *Coolidge* v. *Standard Acc. Ins. Co.,* 114 Cal.App. 716 [300 P. 885], relied upon by respondent, in that in those cases the statute which was declared to be invalid imposed a special burden of pleading and proof upon insurance companies thereby placing them in an unequal and disadvantageous position as to all actions affected by the statute where no reason appeared for the statute other than to favor the claimants under the insurance policies. Such cases as *Stout* v. *Democratic County Central Committee,* 40 Cal.2d 91 [251 P.2d 321]; *Hollman* v. *Warren,* 32 Cal.2d 351 [196 P.2d 562]; *Consolidated Printing & Publishing Co.* v. *Allen,* 18 Cal.2d 63 [112 P.2d 884]; *Austin* v. *Lambert,* 11 Cal.2d 73 [77 P.2d 849, 115 A.L.R. 849]; *Ventura County Harbor Dist.* v. *Board of Supervisors,* 211 Cal. 271 [295 P. 6]; *Franchise Motor Freight Assn.* v. *Seavey,* 196 Cal. 77 [235 P. 1000] do

not aid respondent. They all dealt with factual situations in which there was no conceivable lawful reason for the classification made in the legislation.

Respondent asserts that AB 9 cannot be justified as disaster relief legislation because that purpose is not reflected in its title. As noted above the title of AB 9 indicates that it concerns contribution among tortfeasors and is an urgency measure. The title naturally suggests to the mind the field of legislation which is included in the text of the act, and, therefore, complies with the requirement of article IV, section 24 (now § 9) of the Constitution that the subject of an act shall be expressed in its title. (*Metropolitan Water Dist.* v. *Marquardt,* 59 Cal.2d 159, 173-174 [28 Cal.Rptr. 724, 379 P.2d 28]; *Orange County Water Dist.* v. *Farnsworth,* 138 Cal.App. 2d 518, 526 [292 P.2d 927].) Although the Legislature did not refer to disaster relief in the title of AB 9, its purpose in affording such relief is amply shown by the recitals and declarations in the text of the act.

Respondent contends that AB 9 is an unconstitutional attempt to exercise judicial powers. AB 9 makes no determinations of fact against anyone nor does it adjudicate the rights or liabilities of any parties. Therefore, it is unlike the legislative acts considered in the cases relied upon by respondent. (*United States* v. *Brown,* 381 U.S. 437 [14 L.Ed.2d 484, 85 S.Ct. 1707]; *Taylor & Co.* v. *Place* (1856) 4 R.I. 324; *Truax-Traer Coal Co.* v. *Compensation Comr.,* 123 W.Va. 621 [17 S.E.2d 330].)

Amici curiae are three oil companies which, according to their brief, played a minor role in the development of the Inglewood Oil Field. They are named as defendants in the complaint, but were not served and are not parties to the action. They are concerned that AB 9 changes the rule of law which holds that tortfeasors whose liability is several rather than joint are each liable only for their own contribution to the common injury. Amici curiae contend that AB 9 requires that whether or not their liability is joint or several the contribution of each tortfeasor must be determined by dividing the entire common liability equally among all of them. (See § 4(a).) They ask that this court declare AB 9 unconstitutional to the extent that it requires a pro rata contribution from them if they are found to be several rather than joint tortfeasors.

An essential requirement of a declaratory relief action ''is that there is a real controversy between parties,

involving *justiciable questions* relating to their rights and obligations. Facts and not conclusions of law must be pleaded which show a controversy of concrete actuality as opposed to one which is merely academic or hypothetical.'' (*Wilson* v. *Transit Authority*, 199 Cal.App.2d 716, 722 [19 Cal.Rptr. 59].)

Nothing in the record indicates that either appellants or respondent assert the construction of AB 9 which amici curiae fear. The complaint alleges only that plaintiffs ''contend that in the event that plaintiffs are jointly liable for such damages that plaintiffs are entitled to contribution from the defendants on the basis of'' AB 9 and that ''an actual controversy exists between plaintiffs and defendants as to the constitutionality of'' AB 9. No facts are alleged in the complaint which indicate that the liability of any of the defendants is several rather than joint. In their brief filed in reply to that of amici curiae appellants argue that AB 9 does not require pro rata contribution from defendants whose liability is found to be several because section 3(b) provides, ''Such right of contribution shall be administered in accordance with the principles of equity.'' It appears, therefore, that the controversy about which amici curiae are concerned is hypothetical and not actual.

The record reflects that the plaintiffs have commenced another action for the recovery of damages allegedly incurred by them as a result of claims asserted against them by reason of the failure of the Baldwin Hills dam, in which action amici curiae have appeared as defendants. Facts may develop in that action which render the questions raised here by amici curiae of more than academic interest. The point is not properly raised on this appeal.

The judgment is reversed.

Ford, P. J., and Frampton, J. pro tem.,* concurred.

The petitions for a rehearing were denied June 11, 1968, and respondent's petition for a hearing by the Supreme Court was denied July 10, 1968. Mosk, J., was of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.